UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SILAS CALHOUN and
EMILY CALHOUN, Individually and as
Parents and Next Friends of ESTELLA
CALHOUN,
    Plaintiffs

v.

UNITED STATES OF AMERICA and
ERIC C. DAUB, M.D. and
MARIANNE SUTTON, M.D.,
    Defendants

CIVIL ACTION NO. 04-10480-RGS

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL DEPOSITIONS IN MASSACHUSETTS
AND MOTION FOR PROTECTIVE ORDER**

    The plaintiffs oppose the defendant's motion to compel their depositions in Massachusetts on the grounds that it would work extreme hardship on the family to travel from Hawaii to Massachusetts given that the depositions can conveniently, and without any prejudice to the defendants, be taken by videoconference. Accordingly, the plaintiffs request that, pursuant to Fed. R. Civ. P. 26(c), the Court enter an order protecting the plaintiffs from the undue burden and expense of coming to Massachusetts for deposition. As further support for this opposition and motion, the plaintiffs state as follows:

    1.    The plaintiffs filed this action on March 10, 2004, alleging medical negligence against Dr. Eric Daub, an officer in the U.S. Air Force, and Dr. Marianne Sutton, a pediatrician practicing medicine in Concord, Massachusetts.

    2.    The plaintiffs' Offer of Proof, filed June 16, 2004, included an expert opinion letter prepared by Arlene J. Wust-Smith, M.D., of East Hampton, New York, a board certified pediatrician,

in which she opined that Dr. Daub's care of the plaintiff, Estella Calhoun, deviated from the accepted standard of care because of failure to accurately ascertain Estella's weight and his failure to assess the gravity of an 11 oz. weight loss in a 24-hour period between February 29 and March 1, 2000. (A copy of Dr. Wust-Smith's report is attached hereto as Exhibit A.)

3. Dr. Wust-Smith also opined that Dr. Sutton deviated from the standard of care with respect to her treatment of Estella by discharging Estella from the hospital after only 14 hours of being exclusively orally fed, and because there was no evidence that Dr. Sutton noted Estella's head ultrasound result during Estella's hospitalization.

4. Shortly after leaving the care of Dr. Sutton, Estella presented to the emergency room at Boston Children's Hospital with seizures and was found to have a sagittal sinus thrombosis, a right intraventricular hemorrhage, and a right intraparenchymal hemorrhage on CT scan. Estella has been subsequently diagnosed with a serious sequelae resulting from these blood clots and hemorrhages, including attention deficit hyperactivity disorder (ADHD), anxiety disorder, and sensory integration disorder.

5. Although the report of Dr. Wust-Smith indicated that the etiology of Estella's intracranial bleeding and clotting and subsequent seizures was her dehydration, the report did not state, with specificity, that the intracranial bleeding was the result of the negligence of Dr. Sutton.

6. Upon information and belief, the technical omission of language causally relating Estella's damages to the defendants' conduct was the ground for the negative finding at the Medical Malpractice Tribunal. Accordingly, plaintiffs posted a bond in order to proceed against Dr. Sutton.

7. Subsequent conversations between plaintiffs' counsel and Dr. Wust-Smith have clearly confirmed that Dr. Sutton's negligence in prematurely discharging Estella from the Emerson Hospital

2

was a substantial contributing factor in her development of seizures, thrombosis, hemorrhage and resulting sequelae.

8. In addition, in her deposition Dr. Sutton herself admitted that a known risk for a child with severe of hypernatremic dehydration is an intravascular bleed or thrombus. (Deposition of Marianne Sutton, pp. 34-37, attached hereto as Exhibit B).

9. The plaintiff, Silas Calhoun, is a signal officer with the rank of Captain in the United States Army. At the time of the filing of the complaint, Silas, his wife Emily, and their daughter Estella were attached to Hanscom Air Force Base in Bedford, Massachusetts. Shortly after the case was filed, Silas was transferred to an army base in Hawaii, where the Calhouns are currently living. Silas was transferred from Hawaii to Iraq in late 2003. He completed a 14-month tour of duty in Iraq and returned to Hawaii in February 2005.

10. Estella Calhoun has been diagnosed with sensory integration disorder, anxiety disorder and ADHD. As disclosed in answers to interrogatories served on the defendants, Estella is currently involved in a special needs pre-school. Estella's behavior and activity level depend on her surroundings and she has difficulty controlling herself in public. She gets anxious and frequently loses control over her actions. Estella's emotions are magnified, and when she is upset, it is very difficult for her to calm herself. She has tantrums to the point of vomiting and hyperventilating. Compulsive behavior and exaggerated emotions have interfered with her social development. Activities that involve loud noises, quick or big movements set Estella off and she easily becomes over stimulated.

11. The Calhouns have another child, Cy Henry, who is 3½ years old and, in addition, Emily Calhoun (who is not presently working) is pregnant and expecting her third child.

Under the current circumstances of the Calhoun family, compelling them to come to

Massachusetts for deposition is extremely burdensome and unreasonable. The Calhouns did not voluntarily leave Massachusetts, but rather were required to relocate to Hawaii upon orders of the United States Army. Silas and Emily cannot make the trip on their own and leave Estella or Cy Henry -- the whole family must make the trip. Estella has serous behavioral problems as a result of the defendants' conduct. Traveling from Hawaii to Boston would be difficult and extremely disruptive to her daily regimen. In addition, the Calhouns would have to travel with their young son, Cy Henry, and, as previously mentioned, Emily is pregnant and expecting a third child. Further, Silas has just recently returned from a 14 month tour of duty in Iraq and had no plans or desire to be traveling to the United States mainland.

The plaintiffs have proposed that the depositions be taken by videoconference. This would work no prejudice on the defendants -- they would be able to fully examine the plaintiffs and to observe their demeanor (it is even possible for the United States to arrange to have an attorney be present at the videoconference facility in Hawaii to observe the plaintiffs as well). Any documents that need to be shown to the plaintiffs could be marked prior to the depositions, supplied to them in advance of the deposition, and then discussed at the time of the deposition. To require the plaintiffs to come to Massachusetts would cause great hardship, require substantial expense to the family, and is unnecessary.

Accordingly, the plaintiffs request that the Court deny the defendants' motion to compel their attendance at deposition in Massachusetts and order, pursuant to Rule 26(c), that either the depositions be conducted by videoconference or that counsel go to Hawaii to conduct the depositions.

Plaintiffs,
By their attorneys,

                                    /s/ Michael S. Appel
                Michael S. Appel, BBO No. 543898 (appel@srbc.com)
                Sugarman, Rogers, Barshak & Cohen, P.C.
                101 Merrimac Street
                Boston, MA  02114
                Tel. (617) 227-3030

Dated:  August 11, 2005